**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KENNETH B. JACOBSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12-cv-4-TLW |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Kenneth B. Jacobson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Title XVI of the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 28). A hearing was held on the merits of this case June 13, 2013. (Dkt. # 26). Any appeal of this order will be directed to the Tenth Circuit Court of Appeals.

Plaintiff Kenneth B. Jacobson seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. As set forth below, the undersigned recommends that the Commissioner's decision denying benefits be **REVERSED** and **REMANDED**.

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

## INTRODUCTION

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the

steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 45-year old male, applied for Title II and Title XVI benefits on October 15, 2008, alleging a disability onset date of May 1, 2008. (R. 121-23, 124-25). Plaintiff's last insured date under Title II was determined to be March 31, 2009. (R. 17). Plaintiff alleged that he was unable to work due to arthritis, back pain, memory loss, "right shoulder numbness and limited range of motion." (R. 170). Plaintiff's claims for benefits were denied initially on December 10, 2008, and on reconsideration on April 15, 2009. (R. 67-75, 81-86). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (R. 87). The ALJ held a hearing on January 22, 2010. (R. 36-60). The ALJ issued a decision on March 26, 2010, denying benefits

and finding plaintiff not disabled if he stopped abusing alcohol. (R. 12-30). The Appeals Council denied review, and plaintiff appealed. (R. 1-5).

**The ALJ's Decision**

The ALJ found that plaintiff was insured through March 31, 2009, and had performed no substantial gainful activity since May 1, 2008, his alleged disability onset date. (R. 18). The ALJ also found that plaintiff had severe impairments of "back pain; status post injury to his right shoulder with surgery; depression and anxiety and substance abuse disorder." Id. Plaintiff's impairments did not meet or medically equal a listed impairment. (R. 18-20).

The ALJ then reviewed the medical evidence, plaintiff's testimony, and other evidence to determine plaintiff's residual functional capacity. (R. 20-23). The ALJ noted that plaintiff alleged he is disabled primarily based on his physical conditions, not his mental impairments, and noted that plaintiff's alcoholism was "clearly a material issue on this record" that "must be addressed." (R. 20).

Plaintiff testified that he had an eighth grade education. (R. 20). Plaintiff lives with his girlfriend and her children. His girlfriend supports the family with her unemployment benefits. Id. Plaintiff stopped working May 1, 2008 and has not worked since. Id. He alleges that he is unable to work due to back, neck, and shoulder pain. Plaintiff "has used alcohol, but stopped drinking 3 [three] weeks ago," and he does not attend Alcoholics Anonymous because he does not have transportation. Id. The ALJ summarized plaintiff's testimony regarding his mental issues by saying his "mental health problems include[d] the fact that his mind wanders a lot. He gets about 4 hours of sleep per night. At night his mind comes on and he thinks about death and has had thoughts about his own death for six or seven years since he started medicines." Id.

Plaintiff said his back hurts and he frequently must get off his feet and use a heating pad to relieve the pain. His neck also hurts, and he uses ice and a heating pad to relieve the pain. Id. Plaintiff can walk only a couple of blocks before pain stops him, and can stand for about 15 minutes before his back begins to hurt. He can sit for about 20 minutes, does no housework, cooking, and does not socialize. Id. Plaintiff said he stays in his bedroom 15 hours of the day, and sleeps four hours a night. Id.

The ALJ found plaintiff to be credible "concerning the following symptoms and limitations: The claimant's limited household chores and excessive indoor activities are supported by the medical records from Jane Phillips Medical Center Emergency Room. On this record, virtually every medical encounter was accompanied by a finding of excessive alcohol intake and a condition created by or exacerbated by alcohol." (R. 20-21).

The ALJ then reviewed plaintiff's medical records. Records from Jane Phillips Medical Center show plaintiff was often treated and released for minor problems between January 2008 through September 2008, and alcohol related issues were usually mentioned in his records.

Plaintiff received a CT scan of his head after he "passed out" while painting outside in the summer wearing several layers of clothing. The scan performed on July 5, 2008 showed normal results. Plaintiff was diagnosed with alcohol intoxication, heat exposure, and syncope secondary to both. Doctors advised him to consider alcohol treatment. (R. 21).

In September 2008, plaintiff was admitted to Jane Phillips Medical Center for alcohol detoxification after presenting to the emergency room with various physical complaints over several days. Id. The treating physician at the emergency room noted plaintiff "had some 'underlying obvious problems with alcohol complicated by depression.'" Id. Jane Phillips Medical Center staff noted plaintiff consumed the equivalent of a fifth of alcohol daily at the

time of his admission. Physical examination showed that while plaintiff was "'very emaciated … due to … getting the majority of his calories … from alcohol,'" he was "well-muscled with full range of motion in all four extremities." Id. The ALJ noted previous detoxification admissions prior to 2005. (R. 22).

The ALJ next discussed plaintiff's mental health records, covering the time period of June 2003 through December 2009. (R. 22-23). He noted that plaintiff had been married twice, both of which ended in divorce due to his alcohol consumption, with depression from another separation from his second wife triggering a suicide attempt in 2003; complaints of major depression; plaintiff's admissions of "self-medicating" with alcohol to avoid his problems; reports of high levels of daily alcohol consumption; plaintiff's isolation due to increased symptoms of depression; and no complaints of side effects from his medications. (R. 22).

The ALJ then analyzed opinion evidence from plaintiff's therapist and treating psychiatrist. (R. 22-23). He afforded little weight to the opinion of Ms. Linda Butler, plaintiff's therapist, who stated plaintiff's depression was exacerbated by drug or alcohol abuse, and in her opinion, he would still be disabled absent the alcohol use. (R. 22). The ALJ noted Ms. Butler was not an acceptable source to offer a medical opinion, and further noted her assessment did not specify "the factual basis upon which [she] relied in arriving at the conclusion that the claimant was disabled due to Major Depression or that alcohol was not material" to plaintiff's condition. (R. 23). The ALJ stated her opinion was not supported by "medical evidence" or "mental health evidence of record," however, the ALJ conceded that as plaintiff's therapist, Ms. Butler could "observe and note that alcohol exacerbate[d] the claimant's condition, which it clearly does based upon the evidence." Id. Next, the ALJ discussed limitations imposed by plaintiff's treating psychiatrist, John Mallgren, M.D. Id.

6

After eliciting testimony from the vocational expert at the hearing, the ALJ found plaintiff was unable to return to his past relevant work as a "Production Worker and [a] General Laborer" because, while still using alcohol, he was unable to work five (5) days a week for eight (8) hours each day. The ALJ also found no jobs existed in the national or regional economies suited to plaintiff's RFC while he used alcohol. (R. 23-24).

Next, the ALJ began the required analysis to decide if plaintiff's substance use disorder was a "material factor" to his disability. First, the ALJ found plaintiff's back and shoulder pain "would continue to present difficulty" to him, noting from a consultative examination performed by Justin Hooper, D.O. that plaintiff had limited range of motion in his right shoulder and in his back. (R. 25). Regarding plaintiff's depression and anxiety, the ALJ stated, "Ceasing the use of alcohol would not necessarily fully resolve his depression and anxiety, although he would, according to evidence of record, be able to return to work with limitations." Id. Next, the ALJ found that if plaintiff stopped abusing alcohol, he would still not meet or equal any listing. Id.

If he stopped substance abuse, the ALJ found plaintiff would have the RFC to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant should avoid all work above the shoulder level, is limited to simple, repetitive tasks, and should have no more than incidental contact with the general public." (R. 26). The ALJ noted that "[o]n this record, the claimant's depression and anxiety, when controlled with medication and compliance, is manageable." (R. 27). In reaching this RFC, the ALJ discussed treatment records from Dr. Mallgren, Function Reports completed by plaintiff's fiancé, a Mental Status Form, dated November 19, 2008 from Dr. Mallgren, and opinions from state consultative examiners. (R. 28-29). The ALJ adopted the manipulative limitations noted by J. Marks-Snelling, D.O., a non-examining agency physician, giving the opinion "significant weight," stating the opinion is

7

supported by medical evidence of record. (R. 29). The ALJ assigned little weight to the opinion of the state agency mental consultant's opinion, stating that the conclusions made by "this consultant is [sic] in many ways consistent with Dr. Mallgren's opinion (Exhibit 13F), although Dr. Mallgren's opinion has a more limited perspective due to the claimant's substance abuse. The two opinions from the mental health consultants are given some weight. As with the medical consultants, although not examining psychologists, the opinions are supported by medical evidence of record." Id.

The ALJ determined that with this revised RFC absent substance abuse, plaintiff would be able to return to his past relevant work as a production worker, stating that minus the substance abuse, the physical and mental demands of this work fit into the RFC based on testimony from the vocational expert. (R. 29). Therefore, the ALJ found substance abuse to be a "contributing factor material" to plaintiff's disability, and subsequently decided he was not disabled within the meaning of the Social Security Act. Id.

**Medical Records**

Plaintiff was seen by Jane Phillips Medical Center Emergency Room for the majority of his physical complaints. These records range from May 2006 through September 2010 and show various complaints ranging from coughs to chronic back pain. (R. 222-410, 603-629). The bulk of plaintiff's mental health medical records are from Grand Lake Mental Health Center, Inc., where plaintiff has been a patient of Dr. Mallgren since 2003. (R. 411-469, 505-523, 524-542, 545-593, 594-596, 597, 598-600, 601, 602). At Grand Lake, plaintiff received treatment from various therapists for depression with varying results. Plaintiff reported periods of sobriety during his treatment at Grand Lake, but mainly reported self-medicating to avoid his problems with excessive amounts of alcohol.

**The ALJ Hearing**

The ALJ conducted a hearing on January 22, 2010. (R. 36-60). Plaintiff testified that he felt he could no longer work because his back "can't take it no more, [sic]" and because he was experiencing neck, back, and shoulder pain. (R. 40-41). He also testified that he had stopped drinking three weeks prior to the hearing but was not attending Alcoholics Anonymous or other substance abuse counseling because he had no vehicle. (R. 41).

Plaintiff stated he has been a patient of Dr. Mallgren for "six or seven years" and sees him for medication management. (R. 42). He reported that his medications are "doing all right," that his mind wanders a lot, and that he does not get adequate sleep because his "mind keeps [him] awake every night" with thoughts about his death. (R. 42, 44-45).

Plaintiff said his back pain feels like a burning sensation in his lower back and becomes bad enough that he must get off his feet. (R. 46). When he does get off his feet, he lays on a heating pad on his bed or uses ice to ease the pain. (R. 47). Plaintiff said he experiences this type of back pain at least once a day, and it takes "about two hours" before he can get up and do anything. Id.

At least once a week, plaintiff said that he has neck pain severe enough to prevent him from doing any chores and that he uses the same methods to treat his neck pain as he uses for his back pain. (R. 48). Plaintiff said that a chiropractor told him he needed surgery for his back but that no medical doctor has recommended surgery. (R. 49). Plaintiff stated he does not have pain anywhere else in his body. Id.

Plaintiff said that he can walk "a couple of blocks" before his back pain forces him to stop, that he can stand for approximately 15 minutes before needing to sit, and that he can sit

approximately 20 minutes before back pain forces him to move. (R. 50-51). He admitted that he can lift a ten (10) pound bag of cat food but that it "pulls on [his] lower back." (R. 52).

Plaintiff reported that around the house, he tries to wash dishes, vacuums, and feeds the cats. He said his fiancé performs the remaining household chores, including laundry and cooking. (R. 52-53). He does not go shopping, and he lost his driver's license three years ago due to alcohol use. (R. 53). Plaintiff goes to bed at 8:30 p.m. and rises at 11:00 a.m. on a typical day. He said that he is not sleeping all 15 hours because he "get[s] up and mov[es] around." (R. 55).

## ANALYSIS

On appeal, plaintiff raises four points of error: (1) that the ALJ failed to apply the correct rationale for determining that alcohol abuse is a factor material to his disability; (2) that the ALJ erred when he determined that plaintiff's second RFC permitted a return to plaintiff's past relevant work; (3) that the ALJ failed to properly consider the opinions of the source evidence; and (4) that the ALJ failed to perform a proper credibility analysis. (Dkt. # 17). Because plaintiff's third point of error is dispositive of this case, the Court will address it first.

**Medical Source Opinions**

Plaintiff argues the ALJ rejected the treating physician's opinions (Dkt. # 17 at 2; June 13, 2013 Hearing Recording), and that "the treating team [found] Claimant [] disabled." Id. There are two "opinions" found in the record, neither signed by Dr. Mallgren. A March 9, 2009 Drug Abuse and Alcohol Evaluation form completed by Mr. Bob Blosdel, one of plaintiff's therapists, states plaintiff's depression would not be disabling absent his substance abuse. (R. 602). In contrast, the same form, undated and unsigned, but presumably completed by Ms. Butler states plaintiff would be disabled even if he stopped drinking. (R. 601). Neither "opinion" is from an "acceptable" medical source, and neither opinion points to evidence either therapist

10

relied upon to arrive at the respective conclusions. However, the ALJ only discussed the opinion from Ms. Butler, and did not discuss the contrary opinion of Mr. Blosdel, which would have bolstered his decision.

Dr. Mallgren did sign an undated form, entitled Mental Residual Functional Capacity Assessment. (R. 598-600). This form states that plaintiff's last treatment date was December 8, 2009. (R. 600). Plaintiff was rated with a "marked limitation" in the areas of his ability to understand and remember detailed instructions, carry out very short and simple instructions, carry out detailed instructions, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, interact appropriately with the general public, maintain socially acceptable behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, and his ability to be aware of normal hazards and take appropriate precautions. (R. 598-99). However, Dr. Mallgren's treatment notes mainly show improvement in plaintiff's condition, but the ALJ failed to tie the two together. The ALJ also included a paragraph discussing the mental consultants' opinions, stating they found plaintiff "to be markedly limited in the ability to understand and remember detailed instructions, markedly limited in the ability to carry out detailed instructions, and markedly limited in his ability to interact appropriately with the general public." He noted these opinions were "in many ways consistent with Dr. Mallgren's opinion (Exhibit 13F) [R. 411-12], although Dr. Mallgren's opinion has a more limited perspective due to the claimant's substance abuse." He then gave the agency opinions "some weight," stating they were supported by the evidence of record. (R. 29). He failed to state why he did not accept Dr. Mallgren's opinion, in Exhibit 13F, but did accept similar information from the agency consultants. This failure is a reversible error. On remand, the ALJ is instructed to clarify his reasoning for rejecting Dr. Mallgren's opinion at Exhibit 14F.

**Substance abuse material to disability**

Plaintiff argues that the ALJ "ignored periods of sobriety," "found periods of improvement on medications without explaining exactly what factors were present to justify the change in his RFCs from disabled to not disabled," and did not explain how those findings supported his decision. (Dkt. # 17 at 2; June 13, 2013 Hearing Recording). The Commissioner relies on cites to Grogan v. Barnhart, 399 F.3d 1257, 1264 (10th Cir. 2005), and 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2) to argue that the burden of proving that plaintiff's alcohol abuse is not material to his disability rests with him and, in any event, that the ALJ "considered Plaintiff's limitations both with and without substance abuse" and properly found that plaintiff's alcohol abuse is a material factor in his disability. (Dkt. # 18 at 3-4; June 13, 2013 Hearing Recording).

Plaintiff cites Zemp-Backer v. Astrue, 477 Fed. Appx. 492, 494 (10th Cir. 2012) (unpublished). Zemp-Bacher had defined periods of sobriety with medical evidence of a deteriorating mental condition that the ALJ failed to analyze; this case does not.  Plaintiff cites to three pages of the record (R. 41, 463, and 587), claiming these pages represent periods of sobriety the ALJ ignored. The first instance (R. 41) is moot because the ALJ discussed plaintiff's testimony in his summary. (R. 20). The last reference (R. 587), is unhelpful to plaintiff's case, as this record of treatment notes from plaintiff's therapist show he admitted to drinking. The remaining record cite (R. 463) is unhelpful to prove plaintiff's case because it is a self-report by plaintiff to his therapist that he had been sober for the past six (6) months. No testing was performed at this visit or any diagnoses made. Other medical records around the time of this March 10, 2008 visit show plaintiff's report of sobriety was not truthful. One example is a record dated January 11, 2008 of an emergency room visit by plaintiff to Jane Phillips Medical Center. Plaintiff admitted to staff he had two beers prior to arriving. (R. 21, 310).

12

Thus, there is no evidence of periods of sobriety that were ignored by the ALJ. The Court affirms the ALJ in this respect.

**Step Four**

Plaintiff next argues the ALJ erred by finding that plaintiff could return to his past relevant work as a production worker, claiming the ALJ did not perform the first and second steps of the three pronged analysis required at step four of the evaluation process. (Dkt. # 17 at 3). The Commissioner counters that plaintiff miscast the testimony of the vocational expert, and properly performed the three step analysis required by Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).

The Commissioner's argument is persuasive. The VE testified that the job of "production worker" was performed at the light level and that plaintiff performed it at the light level. This issue is affirmed.

**Credibility**

Plaintiff argues that the ALJ failed to make proper credibility findings because he used "disfavored boilerplate," did not state what testimony he accepted as true, and did not state how plaintiff's "activities are inconsistent with a moderate limitation of concentration, persistence or pace, or are inconsistent with the ability to perform simple tasks. (Dkt. # 17 at 9-10; June 13, 2013 Hearing Recording). The Commissioner argues the ALJ did not solely rely on boilerplate, but provided specific examples of questionable areas that he considered, including plaintiff's testimony at the hearing versus the record. (Dkt. # 18 at 9-10; June 13, 2013 Hearing Recording).[2]

---

[2] The Court also notes the Tenth Circuit has rejected this argument in a separate case. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1170 (10th Cir. 2012)

13

This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

The ALJ found plaintiff not credible, and provided several examples, including his own testimony, of inconsistencies in the record. (R. 26-29). Because the ALJ cited specific, and substantial, evidence in support of his credibility determination and because the evidence does not support plaintiff's claims that the ALJ erred in making his findings, the Court finds no error on this issue.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner finding plaintiff not disabled is REMANDED IN PART and AFFIRMED IN PART.

SO ORDERED this 26th day of June, 2013.

_____
T. Lane Wilson
United States Magistrate Judge